## L. H. HOPKINS v. O. B. DAHL.
## TOWNSHIP OF BURNSVILLE, INTERVENER.[1]

May 22, 1931.

No. 28,322.

*Thomas Kneeland,* for appellant.
*R. R. Barry,* for intervener-respondent.

HILTON, J.

Plaintiff appeals from an order denying his motion for a new trial.

Action to enjoin defendant from trespassing on a portion of plaintiff's land (1.1 acres) which was claimed by defendant to be a highway, and to recover damages for trespasses thereon since 1924. The township of Burnsville, in which plaintiff's land (54 acres acquired by him on December 16, 1916) is situate, intervened and in

[1]Reported in 236 N. W. 706.

its complaint alleged that the strip of land involved had been established and maintained as a public road by common law dedication and statutory user. It also asked that plaintiff be permanently enjoined from interfering therewith. Plaintiff answering denied the allegations of intervener's complaint and alleged that if such roadway had been established it had been abandoned by the public and had ceased to be a public roadway.

The court made findings of fact which, with conclusions of law, resulted in an order for a writ of injunction "forever enjoining and restraining plaintiff from reinstating or maintaining a fence across said road in such a manner as to obstruct the free use thereof as a public road and from in any manner hindering or interfering with travel by the public upon said road."

The question in this case is whether the strip of land in question is a public highway. It was never laid out as such by statutory proceedings. If such highway exists it was by reason of common law dedication.

The court below based its decision largely upon the case of Carpenter v. Gantzer, 164 Minn. 105, 204 N. W. 550, and in its memorandum, which is made a part of its order, quotes at length therefrom. The law as laid down in that case is applicable here; in necessary essentials the facts in the two cases do not materially differ. In some respects they are more weighty here than in the Carpenter case. The variance does not affect the situation and need not be fully detailed.

As found by the trial court, with sufficient support in the evidence, the roadway in dispute (described as to location and termini) had been used as a passageway by the public for a period of over 50 years with the knowledge and acquiescence of the owners. It was at first a trail and later developed into a more pronounced roadway.

Both the road in the Carpenter case and the one in this case are located on the Minnesota river bottoms; one on the northerly side of the river and the other on the southerly. The history and characteristics of each roadway were strikingly similar, as were the

necessary uses made of them, not only by the early pioneers but by their successors in the years following. The roadway in the instant case crossed Brown's creek, which was a short distance west of plaintiff's land. A bridge was built over the creek by the settlers; the then owners of plaintiff's land helped to build it.

The necessity for the road here involved was at least equal to if not greater than that in the Carpenter case. From each terminus of the roadway available means were at hand for crossing the river in order to reach Minneapolis, Cedar avenue being at one end and the village of Savage at the other. A ditch that cut across the highway was bridged in 1915. Whenever the bridge there was washed out it was replaced by another.

There was a deviation, about 20 rods in length, from the line of travel because of a fence placed in 1906 on a part of the land now owned by plaintiff, but travel was not suspended during the time the fence remained. For 52 years (1854 to 1906) there was travel on the roadway without interruption and with no obstacles thereon. Work was done on it near Savage, and culverts and bridges maintained near plaintiff's land.

It was incumbent on defendant and intervener to prove a common law dedication. It was sufficiently proved. There was evidence, within the rule laid down in Jungels v. Schramel, 158 Minn. 93, 197 N. W. 99, that justified the trial court in concluding that there was an appropriation or surrender by the owner to the public use and an acceptance by the public.

Prior to 1899 title to a public way could be obtained by adverse possession (as defined by statute) for a period of 15 years. In 1899 the right thus to obtain such title was abolished. L. 1899, p. 65, c. 65 (now G. S. 1923 [2 Mason, 1927] § 9186) provides: "No occupant of a public way, levee, square, or other ground dedicated or appropriated to public use shall acquire, by reason of his occupancy, any title thereto." See generally 1 Dunnell, Minn. Dig. (2 ed.) § 110, et seq; Haramon v. Krause, 93 Minn. 455, 101 N. W. 791. Prior to 1899 no such adverse possessory rights accrued as to this roadway, and of course none could have since then.

The location of the claimed roadway on plaintiff's land and for considerable distance on both sides thereof is indicated on a plat introduced in evidence by plaintiff. Considering the use that was made of the road, the court rightly fixed its width at two rods. Marchand v. Town of Maple Grove, 48 Minn. 271, 276, 51 N. W. 606; Arndt v. Thomas, 93 Minn. 1, 100 N. W. 378, 106 A. S. R. 418, 2 Ann. Cas. 972.

There was no abandonment of the road, and the rights of the public have in no way been taken from it. Full consideration has been given to all points advanced in plaintiff's behalf. The motion for a new trial was properly denied.

Affirmed.